UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Tony Dejuan Jackson, | Case No. 22-cv-3074 (KMM/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Paul Schnell and Guy Bosch, | |
| Defendants. | |

---

This matter is before the Court on Plaintiff Tony Dejuan Jackson's First Motion for an Emergency Prohibitory Injunction Order and Temporary Restraining Order, (Doc. 26), and Second Motion for an Emergency Prohibitory Injunction Order and Temporary Restraining Order, (Doc. 32). The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 on these Motions. For the following reasons, the Court recommends that Mr. Jackson's Motions be denied.

## BACKGROUND

The Court received Mr. Jackson's original Complaint on December 12, 2022, (Doc. 1), and his Amended Complaint on February 17, 2023, (Doc. 6). Mr. Jackson is currently incarcerated at the Minnesota Correctional Facility located in Bayport, Minnesota ("MCF-Stillwater"). (Doc. 6 at 4.) His Amended Complaint names two defendants: Paul Schnell, Commissioner of the Minnesota Department of Corrections ("MNDOC"), and Guy Bosch, MCF-Stillwater's warden. (*Id.* at 1.) In his Amended Complaint, Mr. Jackson alleges a

deprivation of his Eighth Amendment right to be free of cruel and unusual punishment because of allegedly "hazardous contamination of [l]ead [d]ust [e]missions into the air and water system and food prepared by the food service area" because of an "[i]nadequate [v]entilation [s]ystem and improper disposal of [l]ead based materials[.]" (*Id.* ¶ 5.) Mr. Jackson states that this hazardous environment has occurred "due to the inadequate approval by the Defendants of construction and remodeling projects being inadequately assigned to unskilled and [un]certified individuals working in [the] capacity [of] [p]hysical [p]lant [c]ontractors[.]" (*Id.*) He alleges that these circumstances "involve systemic [s]tructural and [i]nstitutional racism" and "[d]iscriminatory practices and procedures that expose [him] to [i]mminent physical harm[.]" (*Id.*) These alleged harms include that "[he] has developed . . . head ac[he] pains, muscle pains, [t]eeth [that] have developed holes in them, [a] bloody nose, pain in [his] eye sockets, white slime on [the] gums of [his] teeth[,] and nausea." (*Id.*) He also asserts that beginning on November 19, 2022, he was placed "on [s]ecurity [l]ockdown confined . . . without [s]howers, . . . [c]lean [l]inen[s], [or] fresh [a]ir, for more than 8 days" which "subject[ed] [him] to even more prolonged exposure to the [h]azardous [l]ead [d]ust contamination[.]" (*Id.* ¶ 24.) As relief, Mr. Jackson asks that Defendants be enjoined from violating his Eighth Amendment rights through their alleged conduct detailed above, and "also request[s] [i]ndividual $1.5 [m]illion [a]wards against each defendant in punitive damages[.]" (*Id.* ¶ 53.)

While awaiting Defendants' response to his Amended Complaint, Mr. Jackson has filed two Motions seeking preliminary relief that are now before the Court. In the first, Mr. Jackson asks the Court to order that he be given adequate access to MCF-Stillwater's

2

library and its legal resources and to "a computer or laptop electronic device in [his] Cell." (Doc. 26 at 1, ¶¶ 5, 19, 46.) He contends that without this immediate relief, the alleged ongoing violation of his First Amendment rights will result in irreparable harm because he is not able prosecute this case when "[he] is only receiving two law library sessions per month which are 1.5 hours per session" and "is only allowed 50 total copies of legal materials per week[,] including word processor copies."[1] (*Id.* ¶ 9; Doc. 31 at 3.) Defendants oppose Mr. Jackson's Motion. (Doc. 30.)

In his second Motion, Mr. Jackson asks the Court to suspend the MNDOC Commissioner's power "[t]o transfer authority positions and personnel between state correctional facilities as necessary to properly staff facilities and programs" because he contends that "extreme staff shortages" are disrupting the provision of services to prisoners such as himself. (Doc. 32 at 2–4.) Mr. Jackson contends that these disruptions stem from Commissioner Schnell's "illegal transfer of corrections security staff employee job classification, [s]taff vacations, and other staff absences." (*Id.* at 3.) Mr. Jackson asserts that these cancellations "[are] deliberate and intentional" because "Defendant Paul Schnell [wishes to] hurt the Plaintiff Jackson and all other similarly situated persons[.]" (*Id.*) He also argues that because of the lack of adequate staffing to keep the prison safe, on July 27, 2023, a security officer was assaulted, resulting in a facility lockdown which caused Mr. Jackson to "miss[] his scheduled [l]aw [l]ibrary [a]ppointment" the next day. (*Id.* at 8.)

---

[1] In a later memorandum, Mr. Jackson clarifies that "[t]his statement was not correct" because he "is only allowed 50 pages total of legal copies of legal materials per week including word processor copies and copies of [c]ase [l]aw." (Doc. 31 at 1.)

3

## DISCUSSION

A preliminary injunction is issued to "preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (citing *Dataphase Sys., Inc., v. C L Sys., Inc.*, 640 F.2d 109, 113 & n. 5 (8th Cir. 1981) (en banc)). For this reason, "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Id.* (citing *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975)); *accord Owens v. Severin*, 293 F. App'x 425, 425 (8th Cir. 2008) (per curiam); *Hale v. Wood*, 89 F.3d 840, 840 (8th Cir. 1996) (per curiam) (citing *Devose*, 42 F.3d at 471); *Aery v. Nohre*, No. 22-cv-0491 (PJS/TNL), 2022 WL 4084180, at *1 (D. Minn. Aug. 5, 2022), *R. and R. adopted*, 2022 WL 4080753 (D. Minn. Sept. 6, 2022); *Fiorito v. Fikes*, No. 22-cv-0512 (WMW/HB), 2022 WL 2276734, at *2 (D. Minn. May 23, 2022), *R. and R. adopted*, 2022 WL 2275866 (D. Minn. June 23, 2022); *Bakambia v. Schnell*, No. 20-cv-1434 (NEB/DTS), 2022 WL 1090537, at *3 (D. Minn. Feb. 8, 2022), *R. and R. adopted*, 2022 WL 1090602 (D. Minn. Apr. 11, 2022).

The Court finds that the injuries claimed in Mr. Jackson's Motions and the alleged unlawful conduct asserted in his Amended Complaint are unrelated. Mr. Jackson's Amended Complaint concerns the MNDOC's alleged failure to provide him with a prison facility free of toxic lead, which he claims is endangering his health as demonstrated by a variety of alleged physical symptoms. (Doc. 6, ¶ 5.) In contrast, his Motions seek orders requiring the MNDOC to provide him access to legal research-related facilities and

4

materials, and suspending Commissioner Schnell's authority to allocate staffing in state prison facilities, respectively. (Doc. 26 at 1, ¶¶ 5, 19, 46; Doc. 32 at 2–4.)

If a prisoner fails to establish the necessary connection between his requested preliminary relief and his underlying claims in an action, no *Dataphase* analysis of factors concerning preliminary relief is required. *See Munt v. Larson*, No. 15-cv-0582 (SRN/SER), 2015 WL 5673087, at *18 n.23 (D. Minn. July 30, 2015) (citing *Devose*, 42 F.3d at 471) (denying plaintiff's requested preliminary relief because plaintiff established no connection between plaintiff's civil rights claim of inadequate medical care and his motion for preliminary relief because of lack of access to the court to litigate his case), *R. & R. adopted in part, rejected in part*, 2015 WL 5673108 (D. Minn. Sept. 23, 2015).

Even if the Court were to consider the merits of Mr. Jackson's Motions seeking preliminary relief under the *Dataphase* factors, it would still find that he fails to show the imminent risk of irreparable harm necessary for the Court to recommend granting him a preliminary injunction. In determining whether a preliminary injunction should issue, courts should consider "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict upon other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Dataphase*, 640 F.2d at 114). "The burden of proving that a preliminary injunction should be issued rests entirely with the movant." *Id.* Additionally, a preliminary injunction is an extraordinary remedy, and "in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the

5

complex and intractable problems of prison administration." *Id.* (internal quotation marks omitted).

Applying the *Dataphase* factors above, the Court finds that although Mr. Jackson claims in his first Motion that his ability to access the courts is being severely compromised, Mr. Jackson has been able to file a responsive memorandum to Defendants' opposition to his first Motion, (Doc. 31), as well as another Motion seeking immediate injunctive relief on a separate matter, (Doc. 32). No threat of irreparable harm thus appears present on this record. *Accord Fiorito*, 2022 WL 2276734, at *3.

As to his second Motion, Mr. Jackson has likewise failed to present sufficient evidence that the MNDOC's allegedly low staffing levels are causing Mr. Jackson "irreparable harm." Mr. Jackson's allegations that low staffing levels led to the attack of a security guard, then a lockdown of the facility, which resulted in his loss of access to the law library the next day, does not rise to the level of irreparable harm that preliminary relief is meant to address. *See Bakambia*, 2022 WL 1090602, at *1 (quoting *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) ("To show irreparable harm, [a movant] must establish that 'the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'").

Therefore, the Court finds that Mr. Jackson has failed to allege anything in his Motions that would suggest an imminent risk of irreparable harm to his ability to prosecute this civil action or benefit fully from any relief that may be awarded, and recommends that the Court deny his Motions seeking preliminary relief.

## RECOMMENDATION

Based on the above, and on all the files, records, and proceedings in this action, **IT IS RECOMMENDED** that:

1) Plaintiff Tony Dejuan Jackson's First Motion for an Emergency Prohibitory Injunction Order and Temporary Restraining Order, (Doc. 26), be **DENIED**; and

2) Mr. Jackson's Second Motion for an Emergency Prohibitory Injunction Order and Temporary Restraining Order, (Doc. 32), be **DENIED.**


DATED: August 17, 2023            *s/Douglas L. Micko*
                                  DOUGLAS L. MICKO
                                  United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).