UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Tony Dejuan Jackson, | Case No. 22-cv-3074 (KMM/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Paul Schnell and Guy Bosch, | |
| Defendants. | |

---

This matter is before the Court on Plaintiff Tony Dejuan Jackson's Third Motion for an Expedited Preliminary Injunction and Temporary Restraining Order (Doc. 60). The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 on these Motions. For the following reasons, the Court recommends that Mr. Jackson's motion be denied.

## BACKGROUND

The Court received Mr. Jackson's original Complaint on December 12, 2022 (Doc. 1), and his Amended Complaint on February 17, 2023 (Doc. 6). Mr. Jackson is currently incarcerated at the Minnesota Correctional Facility located in Bayport, Minnesota ("MCF-Stillwater"). (Doc. 6 at 4.) His Amended Complaint names two defendants: Paul Schnell, Commissioner of the Minnesota Department of Corrections ("MNDOC"), and Guy Bosch, MCF-Stillwater's warden. (*Id.* at 1.) In his Amended Complaint, Mr. Jackson alleges a deprivation of his Eighth Amendment right to be free of cruel and unusual punishment

because he claims that he has been exposed to lead dust in the air, water, and food while in prison because of inadequate ventilation and the improper disposal of lead-based materials. (*Id.* ¶ 5.) Mr. Jackson states that this hazardous environment has occurred because the Defendants have hired unskilled, uncertified physical plant contractors. (*Id.*) He alleges that these circumstances demonstrate systemic, institutional racism because of discriminatory practices and procedures that are exposing him to physical harm. (*Id.*) These alleged harms include that he has developed physical symptoms such as headaches, tooth holes, a bloody nose, eye socket pain, slime on his gums, and nausea. (*Id.*) He also asserts that beginning on November 19, 2022, he was placed on a security lockdown and deprived of showers, clean linens, and fresh air for over eight days, which also simultaneously exposed him for a prolonged period to hazardous lead dust contamination. (*Id.* ¶ 24.) As relief, Mr. Jackson asks that Defendants be enjoined from violating his Eighth Amendment rights through their alleged conduct detailed above, and also requests a $1.5 million award in punitive damages from each Defendant. (*Id.* ¶ 53.)

      While awaiting Defendants' response to his Amended Complaint, Mr. Jackson filed two prior motions seeking preliminary relief. In the first, Mr. Jackson asked the Court to order that he be given adequate access to MCF-Stillwater's library and its legal resources and to "a computer or laptop electronic device in [his] Cell." (Doc. 26 at 1, ¶¶ 5, 19, 46.) He argued that without this immediate relief, the alleged ongoing violation of his First Amendment rights would result in irreparable harm because he is not able prosecute this case when "[he] is only receiving two law library sessions per month which are 1.5 hours per session" and "is only allowed 50 total copies of legal materials per week[,] including

word processor copies."[1] (*Id.* ¶ 9; Doc. 31 at 3.) Defendants opposed Mr. Jackson's Motion. (Doc. 30.)

In his second motion, Mr. Jackson asked the Court to suspend the MNDOC Commissioner's power "[t]o transfer authority positions and personnel between state correctional facilities as necessary to properly staff facilities and programs" because he contends that "extreme staff shortages" are disrupting the provision of services to prisoners such as himself. (Doc. 32 at 2–4.) Mr. Jackson argued that these disruptions stem from Commissioner Schnell's "illegal transfer of corrections security staff employee job classification, staff vacations, and other staff absences." (*Id.* at 3 (cleaned up).) Mr. Jackson asserts that these cancellations are deliberate and intentional, as "Defendant Paul Schnell [wishes to] hurt the Plaintiff Jackson and all other similarly situated persons." (*Id.*) He also claimed that because of the lack of adequate staffing to keep the prison safe, on July 27, 2023, a security officer was assaulted, resulting in a facility lockdown which caused Mr. Jackson to miss a law library appointment scheduled for the next day. (*Id.* at 8.)

The Court issued a Report and Recommendation recommending denial of these two motions on August 17, 2023 (Doc. 34). The Court recommended denial because Mr. Jackson had failed to establish the necessary connection between his requested preliminary relief and his underlying claims in this action. (*Id.* at 4–5.) Mr. Jackson filed an Objection to the Court's Report and Recommendation (Doc. 40), to which Defendants responded

---

[1] In a later memorandum, Mr. Jackson clarified that "[t]his statement was not correct" because he "is only allowed 50 pages total of legal copies of legal materials per week including word processor copies and copies of case law." (Doc. 31 at 1 (cleaned up).)

3

(Doc. 43). The Report and Recommendation and Plaintiff's Objection are pending before the district court.

Meanwhile, Mr. Jackson renews his request for a preliminary injunction and temporary restraining order in a third motion (Doc. 60). In support of that motion, Plaintiff provides an offender kite form asking that Stillwater's prison staff "please provide [him] with sessions in the law library for the use of the word processor." (Doc. 61 at 2 (cleaned up).) In response, it appears that the prison provided him law library time seven days later for several hours for typing. (*Id.*) Additionally, in his accompanying proposed order (Doc. 62), Mr. Jackson asks the Court to order Defendants to show cause why a preliminary injunction should not be issued that forbids prison staff from interfering with his access to word processors and to the "offender network" used to access legal files, medical records, case management files, and similar confidential information (*id.* at 1–2). Finally, in Mr. Jackson's accompanying letter (Doc. 63), he presents an account of events that occurred on October 19, 2023, concerning prison staff interference with his use of the law library (*id.* at 1–2). Specifically, he claims he was required to go "through the metal detector (which was unusual)"; that the acting librarian "refused to copy [Mr. Jackson's] documents"; that the acting librarian required him "to get approval from the finance department first" to prove that he could pay for the copies; and that the acting librarian refused to return Mr. Jackson's legal paperwork in the meantime. (*Id.* at 1–2 (cleaned up).) Mr. Jackson claims he then went to speak with someone in the Education Department about this issue, and while he was waiting for a response, he printed a document he intended to file in this action, but again the acting librarian refused to give him the printed legal

materials. (*Id.* at 3.) Mr. Jackson alleges that he then accused the acting librarian of creating procedures no one has heard of to harass and retaliate against him, at which point he claims that the acting librarian asked him "to leave the law library and go back to the cell block." (*Id.* at 4 (cleaned up).) Mr. Jackson claims he then asked for a supervisor to be called because he felt threatened, and also sought the help of someone in the Education Department. (*Id.*) He recounts that he was asked to leave the library and was allowed to retrieve his materials and return to the Education Department, but felt further threatened and retaliated against by a prison staff member in the Education Department. (*Id.* at 5.) After a phone call between staff members, Plaintiff claims that staff informed him that he had to leave the Education Department area or he would be escorted to segregation. (*Id.*) Plaintiff alleges that as he left to go back to his cellblock, he tried to tell several staff members that he felt threatened but ended up being escorted to his cell and put on investigative lockdown. (*Id.* at 6.) Mr. Jackson argues that he "is engag[ing] in protected conduct . . . [in] prosecuting his case[,]" that "the continuing adverse action taken against [him] . . . would deter a person" taking such protected actions, and that prison staff intend to cause that deterrence. (*Id.* at 7 (cleaned up).) He asks the Court to recognize that prison staff pose a risk of immediate and imminent physical harm to him and are unlawfully retaliating against him for trying to exercise his rights. (*Id.*)

Defendants oppose Plaintiff's motion, arguing that "[t]he Court should deny Jackson's third motion because there is no relationship between Jackson's allegations in his TRO motion and the conduct he alleged in the operative complaint." (Doc. 71 at 1.)

5

## DISCUSSION

A preliminary injunction is issued to "preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (citing *Dataphase Sys., Inc., v. C L Sys., Inc.*, 640 F.2d 109, 113 & n. 5 (8th Cir. 1981) (en banc)). For this reason, "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Id.* (citing *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975)); *accord Owens v. Severin*, 293 F. App'x 425, 425 (8th Cir. 2008) (per curiam); *Hale v. Wood*, 89 F.3d 840, 840 (8th Cir. 1996) (per curiam) (citing *Devose*, 42 F.3d at 471); *Aery v. Nohre*, No. 22-cv-0491 (PJS/TNL), 2022 WL 4084180, at *1 (D. Minn. Aug. 5, 2022), *R. and R. adopted*, 2022 WL 4080753 (D. Minn. Sept. 6, 2022); *Fiorito v. Fikes*, No. 22-cv-0512 (WMW/HB), 2022 WL 2276734, at *2 (D. Minn. May 23, 2022), *R. and R. adopted*, 2022 WL 2275866 (D. Minn. June 23, 2022); *Bakambia v. Schnell*, No. 20-cv-1434 (NEB/DTS), 2022 WL 1090537, at *3 (D. Minn. Feb. 8, 2022), *R. and R. adopted*, 2022 WL 1090602 (D. Minn. Apr. 11, 2022).

The Court finds that the injuries claimed in Mr. Jackson's third motion and the alleged unlawful conduct asserted in his Amended Complaint are unrelated. Mr. Jackson's Amended Complaint concerns the MNDOC's alleged failure to provide him with a prison facility free of toxic lead, which he claims is endangering his health as demonstrated by a variety of alleged physical symptoms. (Doc. 6, ¶ 5.) In contrast, his motion asks the Court

6

to require prison staff to stop actions that he claims interfere with Mr. Jackson's access to use the law library and its technology. (Doc. 60 at 1.)

As the Court explained in its last Report and Recommendation, if a prisoner fails to establish the necessary connection between his requested preliminary relief and his underlying claims in an action, no *Dataphase* analysis of factors concerning preliminary relief is required. *See Munt v. Larson*, No. 15-cv-0582 (SRN/SER), 2015 WL 5673087, at *18 n.23 (D. Minn. July 30, 2015) (citing *Devose*, 42 F.3d at 471) (denying plaintiff's requested preliminary relief because plaintiff established no connection between plaintiff's civil rights claim of inadequate medical care and his motion for preliminary relief because of lack of access to the court to litigate his case), *R. & R. adopted in part, rejected in part*, 2015 WL 5673108 (D. Minn. Sept. 23, 2015).

Additionally, even if the Court were to consider the merits of Mr. Jackson's third motion seeking preliminary relief under the *Dataphase* factors, it would still find that he fails to show the imminent risk of irreparable harm necessary for the Court to recommend granting him a preliminary injunction. In determining whether a preliminary injunction should issue, courts should consider "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict upon other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Dataphase*, 640 F.2d at 114). "The burden of proving that a preliminary injunction should be issued rests entirely with the movant." *Id.* Additionally, a preliminary injunction is an extraordinary remedy, and "in the prison context, a request for injunctive relief must always

7

be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Id.* (internal quotation marks omitted).

Applying the *Dataphase* factors above, the Court finds that although Mr. Jackson claims his ability to prosecute his case is being impeded by prison staff, Mr. Jackson has been able to file a new miscellaneous proceeding in the interim. (Doc. 74 at 2–3.) No threat of irreparable harm thus appears present on this record. *Accord Fiorito*, 2022 WL 2276734, at *3.

Therefore, the Court finds that Mr. Jackson has failed to allege anything in his motion that would suggest an imminent risk of irreparable harm to his ability to prosecute this civil action or benefit fully from any relief that may be awarded, and recommends that the Court deny his third motion seeking preliminary relief.

## RECOMMENDATION

Based on the above, and on all the files, records, and proceedings in this action, **IT IS RECOMMENDED** that:

1) Plaintiff Tony Dejuan Jackson's Third Motion for an Expedited Preliminary Injunction and Temporary Restraining Order (Doc. 60) be **DENIED**.


DATED:  December 12, 2023         *s/Douglas L. Micko*
                                  DOUGLAS L. MICKO
                                  United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).