UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Tony Dejuan Jackson, | Case No. 22-cv-3074 (KMM/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Paul Schnell, Guy Bosch, and William Bolin, | |
| Defendants. | |

Through the years, Plaintiff Tony Dejuan Jackson has filed numerous civil rights complaints seeking to address the conditions of confinement in Minnesota prisons. He does so again in this matter. For the claims raised in this case, however, Mr. Jackson failed to avail himself of the administrative remedies within the state's prison system before filing suit. Defendants Paul Schnell, Guy Bosch, and William Bolin (collectively, "Defendants") have moved for Summary Judgment on that basis (Docs. 83 (motion), 84 (memorandum), 85 (declaration and exhibits)), to which Plaintiff Tony Dejuan Jackson has responded (Docs. 90 (memorandum), 91–93 (declaration, affidavit, and exhibits)),[1] and Defendants

---

[1] Mr. Jackson also asks the Court to consider, in addition to the materials filed with his memorandum opposing Defendants' motion, his filings in his other federal cases because they support his claims against Defendants here. However, it is not the Court's role to sift through documents and make guesses about what might be evidence supporting a plaintiff's claims, and the Court declines to do so here. *See Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 734 (8th Cir. 2009); *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006); *Rodriguez-Senum v. Senum*, No. 21-cv-2280

have replied (Doc. 96). According to Defendants, Mr. Jackson's failure to exhaust his administrative remedies requires dismissal of his lawsuit. Defendants also ask that, if the Court denies their motion seeking summary judgment, the Court amend this case's current Pretrial Scheduling Order (Doc. 39) to extend the deadlines for nondispositive and dispositive motions and for trial readiness. (Docs. 98 (motion), 99 (memorandum).) This case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that Defendants' Motion for Summary Judgment be granted and all claims against Defendants be dismissed with prejudice. Based on this recommendation, the Court also recommends that Defendants' motion seeking an amendment to this case's schedule be denied as moot.

## BACKGROUND

Mr. Jackson is currently incarcerated at the Minnesota Correctional Facility-Stillwater ("MCF-Stillwater"), located in Bayport, Minnesota. (Doc. 52-1.) He brought this civil action in late 2022 under 42 U.S.C. § 1983 against Paul Schnell, Commissioner of Minnesota Department of Corrections ("DOC"), Guy Bosch, former Warden at MCF-Stillwater, and William Bolin, current Warden at MCF-Stillwater, all acting in their official capacities and as actors of the State of Minnesota, for deprivations of his Eighth Amendment rights. (Doc. 52 ¶ 8.)

---

(JRT/LIB), 2022 WL 993674, at *2 (D. Minn. Apr. 1, 2022) (citing *Smith v. Hennepin Cty. Fam. Ct.*, No. 19-cv-3100 (DSD/BRT), 2020 WL 1930555, at *1 n.2 (D. Minn. Mar. 24, 2020), *R. & R. adopted*, 2020 WL 1923219 (D. Minn. Apr. 21, 2020).

2

Mr. Jackson's operative complaint alleges Defendants "are part of a continuous pattern of intentional . . . Civil Rights Violations and Human Rights Violations that are Cruel and Unusual Punishment, [and] that impose Atypical and significant Hardship on the Plaintiff Jackson in Relations to the Ordinary incidents of Prison Life." (*Id.*) He characterizes Defendants' actions as "sadistic" and rising to a level of reckless disregard for his safety because of their failure to address the facility's hazardous conditions and their medical neglect of resulting illnesses. (*Id.* ¶¶ 8, 16, 38.) Specifically, Mr. Jackson alleges that MCF-Stillwater's facility contains hazardous levels of lead dust (*id.* ¶ 12); an inadequate ventilation system (*id.* ¶ 13); smoke from the Canadian wildfires lingering in the facility and causing physical symptoms *(id.* ¶¶ 20–21); and overwhelming heat and humidity at the facility (*id.* ¶ 22).

Defendants move for summary judgment on the ground that Mr. Jackson, as an inmate at MCF-Stillwater, is required to exhaust his administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e. Defendants argue that there is no dispute that Mr. Jackson has failed to exhaust the prison's available grievance procedure for his claims in this lawsuit, and that the Court should thus dismiss Mr. Jackson's lawsuit on that basis. Mr. Jackson opposes Defendants' motion, arguing that dismissal is not warranted on the basis of a failure to exhaust his administrative remedies because the administrative process described by Defendants was not actually available to him as a practical matter.

## ANALYSIS

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is material if it "might affect the outcome of the suit." *Id*. at 248. And a genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. When deciding a motion for summary judgment, a court "must view the evidence 'in the light most favorable to the opposing party,'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), drawing "all justifiable inferences" in the opposing party's favor, *id.* at 651 (quoting *Anderson*, 477 U.S. at 255). But a court should not accept a party's unsupported allegations that are "contradicted by the record, so that no reasonable jury could believe" them. *Edwards v. Byrd*, 750 F.3d 728, 733 (8th Cir. 2014) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *see also Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) ("To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue for trial.").

Additionally, when considering a motion for summary judgment, pleadings submitted by pro se litigants are held to less stringent standards than if a lawyer had drafted formal pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, a pro se plaintiff's claims cannot survive a motion for summary judgment unless the plaintiff sets forth specific facts demonstrating that there is a genuine issue for trial. *See Quam v. Minnehaha Cty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987) ("Although [plaintiff] is entitled to the benefit of a liberal construction of his pleadings because of his pro se status, Federal Rule of Civil Procedure 56 remains applicable to [plaintiff's] lawsuit.").

I. **MR. JACKSON FAILED TO EXHAUST MCF-STILLWATER'S ADMINISTRATIVE PROCEDURES FOR THE CLAIMS HE BRINGS IN THIS ACTION.**

The parties do not dispute that MCF-Stillwater provides a grievance process for inmate complaints, nor do they dispute what that grievance process entails. Specifically, at MCF-Stillwater, each incarcerated person is issued a handbook upon admission to the facility. (Doc. 85 ¶¶ 2–3, Ex. 1.) This handbook includes DOC Policy 303.100 and sets forth the facility's grievance procedure. (*Id.*) According to this policy, the first step a complainant must take is informal resolution by sending a communication called a "kite" to facility staff responsible for the relevant area of facility oversight. (*Id.* ¶ 2, Ex. 1.) If the response to the kite is unsatisfactory, the complainant "may proceed up the facility chain of command." (*Id.*) If a complainant reaches the top of the command chain and informal resolution is unsuccessful, a complainant may proceed to file a formal grievance using a specific grievance form. (*Id.* ¶¶ 2, 5, 6–7, Ex. 2.)

MCF-Stillwater's grievance coordinator receives and tracks grievance forms and assesses whether a form meets the filing requirements of Policy 303.100. (*Id.*) If the coordinator determines a form fails to conform to the required criteria, they return the form to the complainant with a document explaining why the grievance form was inadequate. (*Id.* ¶ 6, Ex. 3.) Even if the form is deemed unacceptable, the coordinator still retains a record of the returned grievance, along with any supporting documents submitted by the complainant. (*Id.*) Alternatively, if the coordinator finds a grievance form is properly completed, they refer the grievance to the appropriate head of department at MCF-Stillwater. (*Id.* ¶¶ 6–7.) At this point, a summary of the grievance and relief requested is entered into the DOC's Correctional Operations Management System ("COMS"). (*Id.* ¶ 7.) The Warden or a designee of the Warden then makes the final decision on, and responds to, the grievance. (*Id.*) If a complainant is not satisfied with the response, they may initiate a grievance appeal to the DOC's Central Office, and any response from the Central Office becomes the DOC's final response for purposes of administrative exhaustion. (*Id.*)

In filing their motion, Defendants provided a declaration under penalty of perjury from MCF-Stillwater's current grievance coordinator, Susan Armstrong, stating that the claims that Mr. Jackson raises in this suit could have been raised through the DOC's grievance procedure, but that he failed to do so. (*See generally* Doc. 85.) The declaration states that DOC has searched the grievance database, including the records of returned grievances at MCF-Stillwater, and they have found no record of Mr. Jackson filing—or attempting to file—a grievance for the claims he brings against Defendants. (*Id.* ¶ 8.) Because the record conclusively establishes that Mr. Jackson failed to exhaust his

6

administrative remedies under Policy 303.100, Defendants ask the Court to grant them summary judgment on that basis.

Enacted in 1995 in response to a rise in prisoner litigation, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 84, 90–91 (2006). The PLRA does not specify any particular exhaustion procedure, but requires prisoner litigants to follow the grievance procedure at the facility where they are housed. *See Jones v. Bock*, 549 U.S. 199, 218 (2007).

It is a defendant's burden to show that an incarcerated plaintiff failed to exhaust all available administrative remedies. *Lenz v. Wade*, 490 F.3d 991, 993 n.2 (8th Cir. 2007); *Lyon v. Vande Krol*, 305 F.3d 806, 808–09 (8th Cir. 2002) (en banc). Administrative remedies are generally considered exhausted "[w]hen an inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (quoting *Hammett v. Cofield*, 681 F.3d 945, 947–48 (8th Cir. 2012) (per curiam)). "It does not matter that the inmate 'subjectively believed that there was no point in his pursuing administrative remedies.'" *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (quoting *Lyon*, 305 F.3d at 809).

7

The Court finds that Defendants have met their burden to show that there is no genuine dispute of material fact that Mr. Jackson has failed to exhaust his administrative remedies under Policy 303.100. The evidence submitted shows that Mr. Jackson filed suit on claims that he has not pursued through to the final stage of the prison grievance process, and for which he has not received an adverse decision on the merits through that process. For the purposes of summary judgment, this means that Mr. Jackson has not presented probative evidence sufficient to show that a dispute exists about his failure to administratively exhaust his claims, and there is thus no fact question to decide on this issue. *See, e.g.*, *Holden v. Hirner*, 663 F.3d 336, 342, 343 (8th Cir. 2011) (affirming grant of summary judgment to defendant where the plaintiff "offered no evidence" to support his claims).

## II. THERE IS NO EVIDENCE DEMONSTRATING THAT MCF-STILLWATER'S ADMINISTRATIVE REMEDIES WERE UNAVAILABLE TO MR. JACKSON.

There is no real question that Mr. Jackson did not follow Policy 303.100, but he argues it would have been futile anyway. He contends that, although the policy exists, it was not actually "available" to him as a practical matter and could not provide the relief he sought.

There is a narrow exception to the exhaustion prerequisite: "the remedies must indeed be 'available' to the prisoner." *Ross v. Blake*, 578 U.S. 632, 639 (2016); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought . . . until such administrative remedies as are *available* are exhausted.") (emphasis added). This means that inmates cannot be held to the exhaustion requirement when the procedure is a "dead end" because prison officials

have prevented them from exhausting their administrative remedies, *see Lyon*, 305 F.3d at 808–09, or have themselves have failed to abide by the grievance procedures, *see Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005). Likewise, if the procedure is so opaque as to become "incapable of use," this also would provide an exception to the exhaustion requirement. *Ross*, 578 U.S. at 643.

Here, Mr. Jackson asserts that Defendants thwarted his ability to use the grievance process and made the procedure so onerous that no person could actually use it, effectively rendering it a dead end. Yet Mr. Jackson has not presented evidence demonstrating what actions any Defendant took, or failed to take, that prevented him from engaging in the grievance procedure. Mr. Jackson also does not present evidence that creates a fact dispute about whether the policy was effectively unusable. Indeed, Mr. Jackson presents no evidence beyond his own declaration and affidavit (Docs. 91–92) and exhibits containing several kites and chain of command memorandums (Doc. 93). In his declaration and affidavit, Mr. Jackson broadly alleges that he believes he has been subjected to retaliation for prior complaints, and that his kites languished with no action on them. (*See generally* Docs. 91-92.) But here, Mr. Jackson's evidence proves too much, since it demonstrates that he is aware of the grievance policy, and has taken advantage of it in the past. As for the threat of retaliation and its deterrent effect, there is a logical disconnect between Mr. Jackson's suggestion that he dare not file a grievance lest he face retaliation and the notion that this supports leapfrogging the grievance procedure altogether so he can file a much more visible federal lawsuit.

9

Related to Mr. Jackson's argument that the grievance policy was effectively a dead end, he asserts that because he reasonably believed that there was no possibility of relief available to him through the grievance procedure at MCF-Stillwater, he was relieved from any duty to exhaust that procedure. As support for this position, he cites *Booth v. Churner*, 532 U.S. 731, 739 (2001). In *Booth*, the plaintiff did not exhaust the prison's grievance system because it did not provide the possibility of recovering monetary damages—the relief that the plaintiff sought. *Id.* at 731. However, *Booth* does not support Mr. Jackson's position because the Supreme Court held that the *Booth* plaintiff still had to exhaust the grievance process, even if it would not afford him the relief sought, so long as the process could still result in *some* responsive action by the prison authorities. *Id.* at 733–34, 741 ("Thus, we think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures.") This makes sense because if a plaintiff could simply ask for unavailable relief and skip the administrative exhaustion process that the PLRA imposes as a result, then Congress's intention of imposing an exhaustion requirement could be easily avoided. *Id.* at 740–41. Whether Mr. Jackson could obtain his requested relief does not alter that a grievance procedure was available to Mr. Jackson, that the PLRA requires its exhaustion before bringing a federal lawsuit, and that Mr. Jackson failed to do so based on the evidence before the Court submitted with this motion's briefs.

Another argument connected to Mr. Jackson's claim that Policy 303.100 was a dead end is that the timeline for completing its required steps was unfeasible and rendered the policy unusable. Specifically, Mr. Jackson claims that the initial informal dispute resolution steps of the process can take longer than the 30-day period permitted to file a formal

grievance. The instructions for submitting a formal grievance require that complainants have received a response (or no response, after seven days) "from the last staff person identified on the Facility Chain of Command" to their kites seeking informal dispute resolution. (Doc. 85, Ex. 1.) This chain-of-command process is so stratified, according to Mr. Jackson, that it cannot be completed in a reasonable time, much less the 30 days for pursuing a next-level appeal. Thus, Mr. Jackson claims that Policy 303.100's procedures were not actually "available" to him. (Doc. 90 ¶ 5).

Judging by the chains of command included as exhibits accompanying Mr. Jackson's memorandum and declarations (*see, e.g.*, Doc. 93, Exs. LL-4 (chain of command in March 2016), LL-7 (chain of command in January 2023), LL-9 (chain of command for March 2023)), as well as Defendants' accompanying exhibits (Doc. 85, Ex. 3 (chain of command for October 2023)), perhaps more than four members of a chain of command could exist for a complaint in 2016, although it appears each area of inmate concern contains a chain of command of no greater than three individuals for the 2023 documents. But giving Mr. Jackson the benefit of the doubt, four individuals at seven calendar days each is 28 days, so a fifth member in a chain would exceed the 30-day limit.

The problem is that this scenario is hypothetical. Mr. Jackson does not present evidence that for the claims in this federal lawsuit, he engaged in the informal kite system, submitted the required kites at the required intervals, waited the required period for responses before proceeding to the next levels, and the result was that he was denied the right to file a formal grievance because his 30-day deadline had passed despite his compliance with the informal kite portion of Policy 303.100. If that were the case, Mr.

11

Jackson would have a stronger argument that the administrative process is meaningless. But those are not the facts before the Court.

Finally, Mr. Jackson argues that Defendants' proffer of evidence is incomplete because Defendants did not submit all of the kites and complaints Mr. Jackson sent to past prison officials in 2016 and 2020, including several offender kite forms he presents in his exhibits. (Docs. 90 at 4–5; 93, Ex. LL-2, LL-12, LL-16.) But none of the materials that Mr. Jackson submits contradict the evidence that he failed to pursue a formal grievance through to exhaustion under the procedures that Policy 303.100 lays out. Nor does the supposed missing evidence suggest the administrative remedy system is somehow broken. Kites are only the first step in the grievance procedure outlined in Policy 303.100 and are not recorded in COMS until a formal grievance is filed. (Doc. 85 ¶¶ 6–7.) One would reasonably expect that not every kite, thus, has a corresponding COMS record. While the Court must draw every reasonable inference it can for Mr. Jackson based on the evidence, *see Tolan*, 572 U.S. at 651, the Court cannot accept a party's unsupported allegations that the record contradicts, *see Edwards*, 750 F.3d at 733. Here, the fact that not every one of Mr. Jackson's complaints was reflected in Defendants' submissions does not mean those complaints were "missing" or that the grievance system is faulty.

In sum, Defendants have met their evidentiary burden to show that Mr. Jackson has not exhausted his administrative remedies, and Mr. Jackson has failed to raise any genuine issues of material fact in dispute on that failure to exhaust. Therefore, the Court recommends that summary judgment be granted to Defendants. Because it is too late for Mr. Jackson to pursue the administrative remedies set forth in DOC Policy 303.100, the

complaint must be dismissed with prejudice on the basis that exhaustion is no longer available. *Accord Knutson v. Schnell*, No. 22-cv-185 (JRT/ECW), 2023 WL 3510900, at *9 (D. Minn. Apr. 18, 2023), *R. & R. adopted*, 2023 WL 3496496 (D. Minn. May 17, 2023).

## RECOMMENDATION

Accordingly, based on all of the files, records, and proceedings above, **IT IS RECOMMENDED** that:

1. Defendants' Motion for Summary Judgment (Doc. 83) be **GRANTED**;

2. This matter be **DISMISSED WITH PREJUDICE** under Federal Rule of Civil Procedure 56 because there is no dispute of material fact that Plaintiff failed to exhaust his administrative remedies, and summary judgment for Defendants is therefore proper; and

3. Defendants' Motion to Amend the Scheduling Order (Doc. 98) be **DENIED AS MOOT**.

Date: July 22, 2024              *s/Douglas L. Micko*
                                 DOUGLAS L. MICKO
                                 United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).